IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,   Case No. 3:21-cr-00374-JGC

        Plaintiff

    v.   **ORDER**

Jaavaid McCarley-Connin,

        Defendant.

This is a criminal case in which a grand jury has indicted the Defendant, Jaavaid Alan McCarley-Connin, on charges of: (1) Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 846; (2) Attempted Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846; (3) Use of a Communications Facility in the Commission of a Drug Trafficking Crime in violation of 21 U.S.C. § 843(b); and (4) Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(i), 924(a)(2).

Defendant moves to suppress all evidence the government seized pursuant to warrants that they secured, in part, due to positive alerts from a drug detection dog. (Doc. 41). He also moves for a suppression hearing. (*Id.*). The gravamen of his motion is that a Cuyahoga County drug detection dog, Ciga, could not have reliably "alerted" on February 9 and February 21, 2021 on packages that, when opened, did not contain the controlled substances that Ciga was certified to detect. The package Ciga flagged on February 9 ("Package 1") contained $19,660 in mixed

1

bills. (Doc. 41-2, pgID 201). The package Ciga flagged on February 21 ("Package 2") contained Fentanyl. (*Id.*, pgID 202). Ciga was not certified to detect the contents of either package. (Doc. 41-1, pgID 193).

The Defendant's Motion claims that the Fentanyl seized from Package 2 is inadmissible fruit of the poisonous tree from the government's search of Package 1.

The government initially challenged the Defendant's standing. (Doc. 45). On November 1, 2022, I found that the Defendant had properly established standing and ordered an evidentiary hearing on his Motion to Suppress. (Doc. 59); *United States v. McCarley-Connin*, No. 3:21-CR-00374-JGC, 2022 WL 17478495 (N.D. Ohio Nov. 1, 2022). I set a hearing date for February 15, 2023. Now pending is the government's Motion for Clarification of my order (Doc. 62), the government's brief in support of its Motion (Doc. 70), the Defendant's opposition thereto (Doc. 74), and the government's reply (Doc. 81).

For the reasons that follow, I grant the government's Motion for Clarification (Doc. 62), vacate my order setting a hearing, deny Defendant's Motion to Suppress and for a Hearing (Doc. 41), and direct the Clerk forthwith to schedule a status/scheduling conference.

## Background

I have previously discussed at length the circumstances behind Defendant's arrest in two earlier orders. *United States v. McCarley-Connin*, No. 3:21-CR-00374-JGC-1, 2022 WL 586607 (N.D. Ohio Feb. 22, 2022); *United States v. McCarley-Connin*, No. 3:21-CR-00374-JGC, 2022 WL 17478495 (N.D. Ohio Nov. 1, 2022). The following discussion supplements those earlier recitations of the factual background.

On February 8, 2021, Postal Inspectors in Cleveland, Ohio, interdicted a priority mail package, Package 1, that bore indicia of drug trafficking activity.[1] They asked Ciga's handler, Detective Michael Twombly, to put the suspect package in a room with dummy packages. Ciga alerted on the suspect package.

Inspector Brandon Holestine applied for and obtained a search warrant for Package 1. When Inspectors opened the package, they discovered $19,660 in mixed bills. (Doc. 41-2, pgID 201).

The warrant, the Defendant claims, was unlawful. This is so, he argues, because Ciga was only certified to alert on marijuana, cocaine, heroin, MDEA, methamphetamine, and their derivatives. Not monies or Fentanyl. Ciga, therefore, could not reliably alert on anything but those drugs. That unreliability, in turn, undercut the probable cause for the warrant for the package.

That search being, according to Defendant, illegal, the Inspectors could not lawfully take the steps that followed.

Those steps were: 1) sending Package 1 along to the addressee in California; 2) on February 21, 2021, interdicting Package 2, addressed to the Defendant's residence when it arrived in Cleveland; 3) obtaining, once Ciga alerted on that package, the search warrant for Package 2 and, following the execution of that search, which revealed the Fentanyl, the search warrant for Defendant's residence; 4) executing a controlled delivery of Package 2, now containing "sham" drugs, to Defendant's address; and 5) arresting Defendant, when he tried to flee following the controlled delivery, and executing the search warrant for the residence.

---

[1] Defendant does not contest the propriety of the government's brief detention and dog sniff of either Package One or Package Two.

In support of his request for a hearing in his Motion to Suppress, the Defendant offers an expert's report by Daniel J. Bowman, a former police canine handler for the Camden, New York Police Department and current certified police canine trainer. (Doc. 41-4). That report calls into question Ciga's reliability – pointing specifically to insufficient information in Ciga's training records and the lack of documentation regarding how Ciga performed the sniffs of both Packages 1 and 2. (*Id.* at pgID 212-15).

As I note *supra*, the Defendant based his motion of the "fruit of the poisonous tree" doctrine. (Doc. 42, pgID 224). He argues that Ciga's alert on Package 1 was unreliable because Ciga was only certified to detect certain non-Fentanyl drugs and not cash. But for that beyond-the-bounds alert, the warrant would not have issued, Package 1 would have remained unopened, and the Inspectors would not have taken the ensuing steps that led to seizure of the drugs, which, in turn, give rise to the Defendant's pending charges.

I disagree.

### Discussion

I grant the government's Motion for Clarification and vacate my prior order for a hearing because: 1) the Defendant has not challenged the Package 1 search on the basis of *Franks v. Delaware,* 438 U.S. 154 (1978); and 2) even if he had asserted a *Franks* challenge, it would not have been successful.

Under *Franks,* a warrant does not lawfully issue where it contains information, material to the finding of probable cause, that is either deliberately false or that the affiant includes with reckless disregard for the truth. *Id.* at 155-56. If the source of the information, *e.g.*, an informant, lies to the affiant, who, in turn, includes the false information in the affidavit, the false

information taints the affidavit and invalidates the warrant only where the affiant knew of or was recklessly disregardful of the falsity. *See id.*

A defendant seeking a *Franks* hearing must make a substantial showing that the affidavit was so tainted. *United States v. Robinson*, No. 3:18-cr-168, 2020 WL 3962130, at *2 (N.D. Ohio, July 13, 2020) (Helmick, J.) ("A defendant seeking to suppress evidence is entitled to a Franks hearing if the defendant makes 'a substantial showing that the affidavit in support of the warrant at issue included a false statement, made knowingly or intentionally, or with reckless disregard for the truth.'") (citing *United States v. Cruz*, 715 F. App'x 454, 456 (6th Cir. 2017)). The fact that the source was untruthful does not matter. *See id* .

Deliberate or recklessly indifferent omission of information material to a probable cause finding also taints the affidavit and invalidates the warrant. *Hale v. Kart*, 396 F.3d 721, 726 n.4 (6th Cir. 2005) (observing that "the *Franks* doctrine applies to omissions of information from affidavits as well").

Ciga's alert provided probable cause as to Package 1's apparent contents. Unlike a two-legged informant, Ciga could not have consciously misinformed Inspector Holestine. Nor could the Inspector have known, when he prepared the affidavit, that the alert was a false positive. Thus, he could not have deliberately included false information, or done so with reckless indifference to the truth in his affidavit.

Three questions remain: 1) did Inspector Holestine know about Ciga's limited certification; 2) if so, would *Franks* have required him to disclose that information to the issuing Judge; and 3) if so, would disclosure have affected the Judge's finding of probable cause?

In this case I need not address these questions.

5

I need not do so because, first, the Defendant seeks suppression on the basis of the fruit of the poisonous tree, not on the *Franks* doctrine, which, in my view, would have been the correct analytical approach.

Next: had Defendant sought to raise a *Franks c*hallenge, his reliance on Ciga's putative unreliability would not, standing alone, have enabled him to prevail. He also would have had to show that Inspector Holestine knew about the limited certification and deliberately withheld that information or recklessly disregarded it when preparing and presenting his affidavit.

Finally, had Defendant made that showing, he would also have had to show that the Magistrate Judge would not have found probable cause and issued the warrant.

In any event, the Sixth Circuit has upheld a Ciga-based warrant. *See United States v. Ligon*, 861 F. App'x 612 (6th Cir. 2021). In that case, Ciga alerted to two USPS packages. Warrant-backed searches revealed Fentanyl. *Id.* at 615. The defendant, attacking Ciga's reliability, argued that the warrants lacked probable cause. *Id.* at 620-21.

In effect, the defendant argued that the warrant failed to include information about Ciga's history in the field, *i.e.* evidence of Ciga's prior accuracy and any previous false alerts. *Id.* The trial court rejected the defendant's motion for a hearing and denied his motion to suppress.

The Circuit affirmed – finding that, under *Florida v. Harris*, 568 U.S. 237, 246-47 (2013), courts can presume the reliability of a canine sniff so long as the affidavit indicates that a "bona fide organization has certified a dog after testing his reliability in a controlled setting."

The defendant did not challenge Ciga's certification in *Ligon*. Nor has the Defendant here made such challenge. The government has met that burden through an affidavit confirming Ciga's certification. (Doc. 41-1, pgID 193).

*Ligon* provides further reason to find that no *Franks* violation occurred.

6

## Conclusion

I therefore conclude that no hearing is necessary. Ciga's reliability – the focus of the requested hearing – is neither relevant nor material. What would have possibly mattered is whether Inspector Holestine knew about Ciga's allegedly limited certification. If he had no knowledge, he did nothing wrong when he used Ciga's alerts to show probable cause in his affidavits.

In any event, Defendant has not only failed to request a *Franks* hearing, he has also failed to claim that the Inspector was aware of Ciga's allegedly limited certification or impropriety of the package sniff procedures.

Finally, there is no reason to believe that, had the Magistrate Judge known about Ciga's lack of qualifications or the alleged impropriety of package sniff set up, such knowledge would have led to a different finding as to probable cause.

Defendant has thus failed to show how and why his request for a hearing on Ciga's reliability would, if allowed, result in pertinent evidence requiring suppression.

It is, accordingly, hereby

ORDERED THAT:

1. The government's Motion for Clarification (Doc. 62) be, and the same hereby is granted;
2. The Defendant's Motion for an evidentiary hearing (Doc. 41) be, and the same hereby is denied, and my previous order granting one is vacated; and
3. The Defendant's Motion to Suppress (Doc. 41) be, and the same hereby is overruled.

So ordered

/s/ James G. Carr
Sr. U.S. District Judge